IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

H. DAVID MOORE, LORRAINE       )
MOORE                          )       No. 3:13-cv-00170-PA
                               )
            Plaintiff,         )       **ORDER**
                               )
      v.                       )
                               )
WELLS FARGO BANK, NA,          )
FIDELITY NATIONAL TITLE        )
INSURANCE COMPANY, CAMAS VIEW  )
1767, LLC                      )
                               )
            Defendant.         )

**PANNER, J.**

Plaintiffs in this action challenge the non-judicial
foreclosure of their house, alleging violations of the Oregon
Trust Deed Act (OTDA), the Oregon Unlawful Debt Collection
Practices Act (OUDCPA), the Oregon Unfair Trade Practices Act
(UTPA), and the Real Estate Settlement Procedures Act (RESPA).
Plaintiffs seek declaratory judgment and to quiet title.
Defendants Wells Fargo and Fidelity move to dismiss [#36] the
complaint.  For the reasons discussed below, Defendants' motion
to dismiss is GRANTED in part and DENIED in part. Pursuant to
Fed. R. Civ. P. 15(a)(2), Plaintiffs are granted 10 days to file

1 - ORDER

an amended complaint.

## Background

Plaintiffs are husband and wife.  Together they executed a deed of trust to secure a loan for the purchase of residential property.  Plaintiffs made arrangements so that their fixed rate house note would be automatically paid from their bank account each month in the amount of $1,864.  At some point, changes in the escrow component of the loan increased the monthly payment to approximately $1,931.  Plaintiffs were unaware of the change and did not increase the amount automatically paid from their account and, as a result, defaulted on the loan.  In December 2011, Defendant Fidelity filed a Notice of Default and Election to Sell, which was rescinded on January 9, 2012.

On the same day the original notice was rescinded, Defendants filed a new Notice of Default and Election to Sell. The Notice indicated that Plaintiffs were approximately $20,500 in arrears on their payments and informed them that the non-judicial foreclosure sale would take place on April 22, 2012. The Notice also instructed of Plaintiffs on what steps they could take in order to cure the default and avert the sale.  Plaintiffs believed the amount of their arrears to be in error, given the relatively small difference between what they had paid on their mortgage each month and the adjusted amount due.  Plaintiffs had sufficient assets in a retirement account which they were prepared to use to cure the default, but did not want to withdraw that money until they were certain of the amount of the default so as to avoid unnecessary tax penalties.

2 - ORDER

Plaintiffs contacted Defendant Wells Fargo and Defendant Fidelity and attempted to ascertain the true amount of the default. Plaintiffs also offered to increase the amount of their monthly payments to prevent further arrearages, but were instructed not to do so by Wells Fargo until the amount of the arrearage was fixed. While the parties negotiated, the sale was postponed until May 22. In May, Defendants once again postponed the sale until September 12, 2012. On that date, the property was sold by trustee sale despite last-minute efforts by Plaintiffs to avert the sale.

Throughout the whole period leading up the foreclosure sale, Plaintiffs had been in communication with Defendant Wells Fargo and had been attempting to get an accounting of their arrearage. According to Plaintiffs, it was not possible that the difference between their automatic payments and the adjusted amount could reach over $20,000, even if the adjustment had occurred at the inception of the loan. Plaintiffs allege that they were unable to get a clear accounting of the debt from Defendants, despite speaking to multiple representatives. Plaintiffs had been faithfully making payments throughout the entire period and they sent bank statements to Wells Fargo to prove it.

On December 21, 2012, Plaintiffs brought this action in the Clackamas County Circuit Court. The matter was removed to this court by Defendants.

## **Standard**

Where the plaintiff "fail[s] to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the

complaint must allege "enough facts to state a claim to relief
that is plausible on its face." Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 570 (2007). For the purpose of the motion to
dismiss, the complaint is liberally construed in favor of the
plaintiff and its allegations are taken as true. Rosen v.
Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare
assertions that amount to nothing more than a "formulaic
recitation of the elements" of a claim "are conclusory and not
entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662,
680-81 (2009). Rather, to state a plausible claim for relief,
the complaint "must contain sufficient allegations of underlying
facts" to support its legal conclusions. Starr v. Baca, 652 F.3d
1202, 1216, reh'g en banc denied, 659 F.3d 850 (9th Cir. 2011).

### Discussion

At some point after the filing of the complaint, Plaintiff
Lorraine Moore passed away. Defendants initially moved to
dismiss on the basis that Plaintiffs failed to join the personal
representative of Mrs. Moore's estate. Defendant now concedes
that Plaintiffs are entitled to appoint a personal representative
of Mrs. Moore's estate and name that person as a Plaintiff in
this action. Defendants also concede that the time for doing so
has not yet passed. I accept Defendants' concessions on these
points. Defendants move to dismiss the individual claims
contained in Plaintiffs' complaint as discussed below:

**I. Plaintiffs' Oregon Trust Deed Act claim.**

Plaintiff's first claim, that Defendants violated the Oregon
Trust Deed Act, ORS 86.705 et seq, rests on two allegations.

4 - ORDER

First, Plaintiffs allege that Defendants prevented them from
exercising their statutory right to cure under ORS 86.753, and
second, that Defendants failed to record assignments of the deed
of trust.   Plaintiffs concede that, under the Oregon Supreme
Court's recent decision in <u>Brandrup v. ReconTrust, NA</u>, 353 Or.
668 (2013), it is not necessary to record assignments of the deed
of trust that occur by operation of law.  The issue before the
court is therefore restricted to Plaintiffs' claim regarding the
right to cure.

Defendants move to dismiss Plaintiffs' first claim on the
basis that challenges to completed foreclosure sales are barred
by ORS 86.770 when the person challenging the sale had proper
notice of the sale.

Under ORS 86.753, a borrower facing foreclosure may cure the
default by paying the entire amount due under the terms of the
obligation and thereby halt the non-judicial foreclosure sale.
ORS 86.753.  ORS 86.770 provides that when property is sold by
non-judicial foreclosure sale under ORS 86.705 to 86.795, that
sale "forecloses and terminates the interest in the property that
belongs to a person to which notice of the sale was given . . . ."
ORS 86.770.

In this case, Plaintiffs argue that the $20,500 sum demanded
by Defendant Wells Fargo was not the amount due under the
obligation and that by failing to provide an accounting,
Defendants prevented them from exercising their right to cure
under ORS 86.753.  Defendants contend that Plaintiffs' complaint
is too late and that ORS 86.770 bars such post-sale challenges.
After reviewing the complaint, briefing, statutes, and case law,

5 - ORDER

I conclude that there are factual issues which might prevent
Plaintiffs' first claim from being barred by ORS 86.770.
Dismissal is therefore not appropriate at this stage and
Defendants' motion to dismiss Plaintiffs' first claim is DENIED.

**II. Plaintiffs' Oregon Unlawful Debt Collection Practices Act
claim.**

Plaintiffs' second claim alleges that Defendants violated
ORS 646.639, the Oregon Unlawful Debt Collection Practices Act.
Specifically, Plaintiffs allege that Defendants enforced their
right to foreclose without allowing Plaintiffs to exercise their
statutory right to cure, in violation of ORS 646.639(2)(k), and
that Defendants attempted to collect charges and fees in excess
of the actual debt, in violation of ORS 646.639(2)(n).
Defendants move to dismiss Plaintiffs' second claim on the basis
that foreclosures are not debt collections within the meaning of
the OUDCPA.

ORS 646.639(2)(k) establishes that it is unlawful for a debt
collector, when collecting a debt, to "[a]ttempt to or threaten
to enforce a right or remedy with knowledge or reason to know
that the right or remedy does not exist, or threaten to take any
action which the debt collector in the regular course of business
does not take." ORS 646.639(2)(n) similarly forbids a debt
collector from "[c]ollect[ing] or attempt[ing] to collect any
interest or any other charges or fees in excess of the actual
debt unless they are expressly authorized by the agreement
creating the debt or expressly allowed by law."

Under the OUDCPA, a "debt" is "any obligation or alleged
obligation arising out of a consumer transaction." ORS

6 - ORDER

646.639(1)(e). A "debt collector" is defined as "any person who by any direct or indirect action, conduct or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction." ORS 646.639(1)(g).

In the foreclosure context, federal courts in the District of Oregon have interpreted the OUDCPA concurrently with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Lampshire v. Bank of America, NA, 2013 WL 1750479, at *3 (D. Or. Apr. 20, 2013); Hulse v. Ocwen Federal Bank, FSB et al., 195 F. Supp. 2d 1188, 1206 (D. Or. 2002). In such cases, they have held that "foreclosing on a trust deed is not the collection of a debt under the OUDCPA." Hulse, 195 F. Supp. 2d at 1206. "As with the FDCPA, foreclosing on a trust deed is not the enforcement of an obligation because it is not an attempt to force the debtors to pay the money owed." Id. Rather, such actions are "akin to debt servicing rather than debt collection on behalf of another, and [a foreclosing entity] cannot be considered a 'debt collector' based on such actions." Lampshire, 2013 WL 1750479 *8.

In this case, Plaintiffs have asserted that the foreclosure of their property was unlawful based on Defendants' alleged violation of the OUDCPA. As in Lampshire, foreclosure of a trust deed cannot be considered an action to collect a debt and Plaintiffs cannot, therefore, invoke the protections of the OUDCPA.

Defendants' Motion to Dismiss Plaintiffs' second claim is GRANTED.

7 - ORDER

III. **Plaintiffs' the Oregon Unfair Trade Practices Act claim.**

Plaintiffs' third claim alleges that Defendants violated ORS 646.608, the Oregon Unfair Trade Practices Act, by making false or misleading representations to Plaintiffs in violation of ORS 646.608(1)(k), and by failing to deal with Plaintiffs in good faith in violation of ORS 646.608(1)(u). Defendant's move to dismiss Plaintiffs' UTPA claim on the basis that 1) Plaintiffs' action is untimely, 2) Plaintiffs cannot demonstrate that their harm was caused by any unlawful practice of Defendants, and 3) Plaintiffs' claim is preempted by federal statutes and regulations. I will address each of these arguments in turn.

**A. Plaintiffs' claim is timely.**

Actions brought under the UTPA must be commenced "within one year from the discovery of the unlawful method, act or practice." ORS 646.638(6). The period of limitations begins to run when the plaintiff knows or should have known of the alleged misconduct. McCulloch v. Price Waterhouse LLP, 157 Or. App. 237, 248 (1998). In determining when a plaintiff knows or should have known of misconduct, courts apply a two step analysis: "First, it must appear that plaintiff had sufficient knowledge to excite attention and put a party upon his guard or call for an inquiry. [Second][i]f plaintiff had such knowledge, it must also appear that a reasonably diligent inquiry would disclose the fraud." Id. (internal quotations omitted).

In this case, Plaintiffs' first indiction of any problem was when Defendant Fidelity recorded a Notice of Default and Election to Sell on December 16, 2011. That Notice was subsequently rescinded on January 9, 2012. On January 21, 2012, Plaintiffs

8 – ORDER

received notice that Defendant Wells Fargo asserted an arrearage of approximately $20,500. Plaintiffs filed this action in the Clackamas County Circuit Court on December 21, 2012.

As Plaintiffs' third claim centers on the dispute over the amount, rather than the existence, of a default, it is appropriate to reckon Plaintiffs' "discovery" of the alleged unlawful practices from date of the January 21, 2012 notice. This action was filed within one year of that date and is, therefore, timely.

Defendants' motion to dismiss Plaintiffs' third claim on this basis is DENIED.

### B. Plaintiffs have sufficiently pled causation.

The UTPA extends a private cause of action to "any person who suffers any ascertainable loss of money or property" as a result of an unlawful trade practice. ORS 646.638(1). ORS 646.608(1)(k) establishes that it is unlawful to make "false or misleading representations concerning...the nature of the transaction or obligation incurred." ORS 646.608(1)(k). ORS 646.608(1)(u) is a catch-all provision, which establishes that it is unlawful to engage in "any other unfair or deceptive conduct in trade or commerce." ORS 646.608(1)(u). In order to bring a claim under ORS 646.608(1)(u), the Oregon Attorney General must first establish a rule declaring the conduct to be unfair or deceptive. ORS 646.608(4). The Oregon Attorney General has issued a rule establishing that it is unfair or deceptive for a mortgage loan servicer to fail to deal with a borrower in good faith. OAR 137-020-0805(6).

To prevail under ORS 646.638(1), a plaintiff must prove "(1)

9 - ORDER

a violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss')." Feitler v. Animation Celection, Inc., 170 Or. App. 702, 708 (2000).

In this case, Plaintiffs allege that Defendants made unlawful misrepresentations as to the amount of their arrearage and that, as a result of those misrepresentations, Plaintiffs were unable to cure the default and their property was foreclosed upon. Defendants take the position that Plaintiffs' injury stems from the foreclosure sale of the house, which was caused by Plaintiff's undisputed default, rather than any action on the part of Defendants.

In support of their position, Defendant cites to Vettrus v. Bank of America, 2012 WL 2905167, at *9-10 (D. Or. July 12, 2012), for the proposition that foreclosure of a deed of trust does not violate the UTPA when there is a material default of the note. In Vettrus, the plaintiff had not made any payments on his mortgage for almost two years. Id. at *10. The court dismissed plaintiff's UTPA claim on the basis that "plaintiff failed to demonstrate that [the foreclosure was] attributable to anything other than his own failure to repay the Note." Id.

In this case, by contrast, Plaintiffs had faithfully made their payments, less the adjusted escrow amount, and were prepared to cure that default once they resolved their dispute with Defendants over the amount. Defendants failed to provide Plaintiffs with a proper accounting of the default amount and represented the amount to be much larger than what Plaintiffs believed possible. Plaintiffs have alleged that Defendants' failure to provide an accounting was in bad faith and prevented

10 - ORDER

Plaintiffs from exercising their right to cure.  As a result,
Plaintiffs house was foreclosed upon and they suffered a loss of
equity.

A causal connection can be made between Defendants' actions
and the foreclosure which harmed Plaintiffs.  Therefore I
conclude that Plaintiffs have sufficiently pled a claim under the
UTPA.  Defendants motion to dismiss on this basis is DENIED.

### C. Plaintiffs' claim is not pre-empted.

In their Reply [#54], Defendants argue that Plaintiffs' UTPA
claim is preempted by the National Banking Act (NBA).

The NBA provides that "[a]ny national banking association
may make, arrange, purchase or sell loans or extensions of credit
secured by liens on interests in real estate, subject to section
1828(o) of this title, and such restrictions and requirements as
the Comptroller of the Currency may prescribe by regulation or
order." 12 U.S.C. § 371(a).

Pursuant to their authority under the NBA, the Comptroller
of the Currency promulgated regulations governing national banks.
12 C.F.R § 34.3.  "A national bank may make real estate loans
under 12 U.S.C. 371 and § 34.3, without regard to state law
limitations concerning: . . . Processing, origination, servicing,
sale or purchase of, or investment or participation in,
mortgages." 12 C.F.R. § 34.4(a)(10).  The conduct of national
banks is not unbounded, however: "A national bank shall not
engage in unfair or deceptive practices within the meaning of
section 5 of the Federal Trade Commission Act, 15 U.S.C.
45(a)(1), and regulations promulgated thereunder in connection
with loans made under this part." 12 C.F.R. § 34.3(c).  15 U.S.C.

11 - ORDER

§ 45(a)(1) prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce. . ." 15 U.S.C. § 45(a)(1).

The Supremacy Clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. There are three scenarios where federal law preempts state law: 1) express preemption, where Congress defines explicitly the extent to which the enactment preempts state law; 2) field preemption, where the state law touches upon an area that Congress intended the federal government to occupy exclusively; and 3) conflict preemption, where the state and federal laws directly conflict, making it impossible for a person to comply with both laws, or where the state law stands as an obstacle to the purposes of Congress. English v. General Elec. Co., 496 U.S. 72, 78-79 (1990).

The NBA does not occupy the entire field of banking regulation. See Cuomo v. Clearing House Ass'n, LLC, 557 U.S. 519, 529-30 (2009). Nor did Congress explicitly preempt state substantive laws with regard to banking. Id. at 530. The court in Young v. Wells Fargo, 671 F. Supp. 2d 1006, 1019 (S.D. Iowa 2009), summarized the standard for preemption under the NBA. "National banks are subject to the laws of a state in respect of their affairs, unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States." Id. States are permitted to regulate the

12 - ORDER

activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers.    Id.

In this case, Plaintiffs' UTPA claims rest on that statute's prohibition of unfair or deceptive trade practices.    That same conduct is also prohibited by 12 C.F.R. § 34.3(c).    It is not impossible for the bank to comply with the UTPA, the NBA, and the Comptroller's regulations.    The UTPA does not frustrate the intentions of Congress in enacting the NBA, nor does it interfere with the bank or the regulator's exercise of their powers.    I conclude that there is no conflict between the federal statutes and regulations and the UTPA in this case and that the UTPA is not preempted.    Defendants' motion to dismiss on that basis is DENIED.

**IV. Plaintiffs' RESPA claim.**

Plaintiffs' fourth claim alleges violations of 12 U.S.C. § 2605, the Real Estate Settlement Procedures Act.    Defendants move to dismiss this claim as inadequately pled.

RESPA provides that mortgage loan servicers must respond in writing to qualified written requests (QWR) by borrowers for information relating to the servicing of their loans.    12 U.S.C. § 2605(e).    A qualified written request is defined as "a written correspondence . . . that- (i)includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."    12 U.S.C. § 2605(e)(1)(B).

13 - ORDER

Failure to comply with § 2605 will result in the servicer being liable to the borrower for "any actual damages to the borrower as a result of the failure," as wells as additional damages if there is a pattern or practice of non-compliance with the requirements of RESPA.  12 U.S.C. § 2605(f)(1).

RESPA claims may be dismissed if the language of the complaint is conclusory with regard to wether the communication made was a QWR. See Lettenmaier v. Federal Home Loan Mortg. Corp., 2011 WL 3476648 *11-*13 (D. Or. Aug. 8, 2011).  The complaint must also state actual damages which result from the violation of RESPA.  Id.

In this case, Plaintiffs claim that, through their attorney, they sent a QWR to Defendant Wells Fargo asking for documents necessary to analyze what had gone wrong with Wells Fargo's accounting.  Wells Fargo sent them a Customer Account Activity Statement and a letter which refused to provide the other requested documents without a subpoena.  As in Lettenmaier, Plaintiffs' complaint is conclusory with regard to whether the communication was a QWR.  Plaintiffs also fail to plead actual damages.  I conclude therefore that Plaintiffs have failed to state a claim for violation of RESPA.  Defendants' motion to dismiss this claim is GRANTED.

**V. Plaintiff's claim for declaratory relief.**

Plaintiff's fifth claim seeks declaratory judgment that the non-judicial foreclosure and trustee sale are void and of no effect.  Defendants assert that this claim has no basis independent of Plaintiffs' claim for violation of the OTDA and move to dismiss Plaintiffs' fifth claim as redundant.

14 - ORDER

28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57.

In this case, Plaintiffs' claim for declaratory relief rests on the same basis as their claim for violation of the OTDA.  It must stand or fall with that claim.  As I have denied Defendants' motion to dismiss Plaintiffs' claim for violation of the OTDA, it would be inappropriate to grant Defendants' motion to dismiss this claim.  Defendants' motion to dismiss Plaintiffs' fifth claim is DENIED.

## Conclusion

Defendants' motion to dismiss [#36] is GRANTED in part and DENIED in part.  Defendants' motion to dismiss Plaintiff's OTDA claim is DENIED.  Defendants' motion to dismiss Plaintiffs' OUDCPA claim is GRANTED.  Defendants' motion to dismiss Plaintiffs' UTPA claim is DENIED.  Defendants' motion to dismiss Plaintiffs' RESPA claim is GRANTED.  Defendants' motion to dismiss Plaintiffs' claim for declaratory relief is DENIED. Plaintiffs are granted 10 days to amend their complaint.

IT IS SO ORDERED.

DATED this _____/_____ day of August, 2013.

Owen M. Panner
United States District Judge

16 - ORDER